IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| United States of America *for the use and benefit of* Adams Steel, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Elkins Contractors, Inc., Ikhana, LLC, *and* Continental Casualty Company, <br><br> Defendants. | Civil Action No. 2:15-85-RMG <br><br><br><br> **ORDER** |

This matter is before the Court on Plaintiff Continental Casualty Company's motion for summary judgment. For the reasons given in this Order, the Court denies the motion.

I.  **Background**

   A.   **The Miller Act**

This is an action on a payment bond under the Miller Act, 40 U.S.C. §§ 3131–34. The Miller Act applies to contracts awarded for the construction, alteration, or repair of any public facility of the United States Government. 40 U.S.C. § 3131(b). It requires prime contractors on government construction contracts exceeding $150,000 to post performance bonds, guaranteeing performance of their contractual duties, and payment bonds, guaranteeing payment of their subcontractors. *See* 48 C.F.R. § 28.102.[1]

A subcontractor of the prime contractor who has not been paid within ninety days of the day when it last furnished labor or materials may bring a civil action on the payment bond for the amount unpaid. 40 U.S.C. § 3133(b)(1). A subcontractor of a subcontractor (a "second-tier"

---

[1] Other provisions not relevant to this action address construction contracts not exceeding $150,000.

-1-

subcontractor) may bring a civil action on the payment bond for the amount unpaid on written notice to the prime contractor given within ninety days of the day when it last furnished labor or materials. 40 U.S.C. § 3133(b)(2). The notice to the prime contractor must be served "by any means that provides written, third-party verification of delivery to the contractor at place the contractor maintains an office or conducts business or at the contractor's residence" or by the same means by which the U.S. marshal may serve summons. *Id.* Subcontractors of those subcontractors, *i.e.*, "third-tier" subcontractors, may not maintain a Miller Act action on a payment bond. *United States ex rel. Glob. Bldg. Supply, Inc. v. WNH Ltd. P'ship*, 995 F.2d 515, 518 (4th Cir. 1993). No action may be commenced "later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

The Miller Act protects the government, by requiring contractors on government construction projects to be bonded, and it protects subcontractors, who might otherwise be reluctant to work on government projects, because the government's sovereign immunity prevents mechanic's liens. *See Glob. Bldg. Supply*, 995 F.2d 517–18. "Unquestionably, the Miller Act is highly remedial in nature and is 'entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'" *United States ex rel. Clark-Fontana Paint Co. v. Glassman Const. Co.*, 397 F.2d 8, 10 (4th Cir. 1968) (quoting *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944)); *see also United States ex rel. Honeywell, Inc. v. A & L Mech. Contractors, Inc.*, 677 F.2d 383, 386 (4th Cir. 1982) ("The principal purpose of the Miller Act is the protection of persons supplying labor and materials to subcontractors on federal construction projects. To that end, the Supreme Court has held that the Miller Act should receive a liberal construction.")

Enforcement of the ninety-day notice period in which a second-tier subcontractor must provide notice of claim to the prime contractor, however, is "exempted from liberal construction," *Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340, 1343 (4th Cir. 1982), and is subject to "[s]trict enforcement," *Honeywell*, 677 F.2d 383 at 386. The ninety-day notice period "provides contractors with a date certain after which they are no longer at risk of liability to second-tier subcontractors," which facilitates "closure of the project finances." *Pepper Burns*, 970 F.2d at 1343. While subcontractors (who are exempt from the notice requirement) submit their invoices directly to the prime contractor, second-tier subcontractors submit their invoices to the subcontractors and therefore the prime contractor has no notice of the outstanding invoices unless notice is provided by the second-tier subcontractors. The notice period allows prime contractors to make final payments to their subcontractors with knowledge that there can be no outstanding claims by second-tier subcontractors. Thus it is a strict requirement that notice actually be "put into the possession of the [prime] contractor" within the ninety-day period. *Id.* The second-tier subcontractor "must sustain the burden of proving receipt [of notice] and it has been uniformly held that this fact may be proved as any other fact." *United States ex rel. Twin Cty. Transit Mix, Inc. v. R. P. McTeague Constr. Corp.*, 264 F. Supp. 619, 620 (E.D.N.Y. 1967).

The Miller Act's notice requirements are not jurisdictional, however. *See, e.g., United States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp.*, 995 F.2d 656, 659 (6th Cir. 1993); *United States ex rel. Bernard Lumber Co. v. Lanier–Gervais Corp.*, 896 F.2d 162, 164 (5th Cir. 1990); *United States ex rel. Nelson v. Reliance Ins. Co.*, 436 F.2d 1366, 1370 (10th Cir. 1971); *United States ex rel. Humble Oil & Ref. Co. v. Fidelity & Casualty Co.*, 402 F.2d 893, 897–900 (4th Cir. 1968); *United States ex rel. E.E. Black, Ltd. v. Price–McNemar Constr. Co.*, 320 F.2d 663, 665–66 (9th Cir. 1963). Thus, although the notice requirement is strictly enforced, it is nevertheless

subject to equitable principles. *See Humble Oil & Refining*, 402 F.2d at 897–99; *United States ex rel. Gulfport Piping Co. v. Monaco & Son, Inc.*, 336 F.2d 636, 636 (4th Cir. 1964); *Datastaff Tech. Grp., Inc. v. Centex Const. Co.*, 528 F. Supp. 2d 587, 594 (E.D. Va. 2007) (collecting cases).

### B.     Factual Background

In July 2012, Defendant Ikhana, LLC ("Ikhana") contracted with the United States Government to serve as general contractor for the construction of the Red Horse Readiness and Training Facility (the "Project") at Joint Base Charleston in South Carolina. (Compl. ¶ 8.) The Miller Act required Ikhana to furnish payment and performance bonds.  On July 24, 2012, Defendant Continental Casualty Company ("Continental") issued payment and performance bonds to Ikhana.  Continental agreed to act as surety and to pay all persons furnishing labor or materials in furtherance of Ikhana's completion of the project. (Compl. Ex. B.)  Ikhana subcontracted with Defendant Elkins Contractors, Inc. ("Elkins") on August 30, 2012, and Elkins subsequently subcontracted with Plaintiff Adams Steel, LLC ("Adams") on October 19, 2012.  (Resp. Opp'n Def.'s Mot. Summ. J. 2–3, Feb. 24, 2016, Dkt. No. 45.)

Adams furnished structural steel, lintels, joists, deck, and erection services for the Project. (Dep. of Phillip Abdelnor Tr. 64:15–65:13, Nov. 24, 2015, Dkt No. 43-2; Compl. ¶ 10, 15, 19.)  In January 2014, Ikhana terminated Elkins, and Adams elected not to continue on the Project.  Adams and Ikhana agree that Adams's last day of work on the Project was February 13, 2014 (Def.'s Answer to Pl.'s Req. for Admis., July 29, 2015, Dkt. No. 45-14), though Continental disputes that date and instead asserts that Adams's last day of work on the project was January 20, 2014, (Reply Supp. Def.'s Mot. Summ. J. 5–7, Feb. 29, 2016, Dkt. No. 47).  Adams made demand upon Elkins for the full value of its work on the Project, but no payment was made. (Compl. ¶ 16.)  Adams submitted a written demand for payment on the payment bond to Continental on April 24, 2014. (Abdelnor Dep. Tr. 64:15–65:13.)

-4-

Continental replied to that demand for payment with a letter dated May 1, 2014. That letter states, in part,

> an authorized representative of Continental Casualty Company, acknowledges receipt of your April 24, 2014 letter claiming that Adams Steel, LLC is due $89,281.04 for labor and/or materials provided to Elkins Constructors, Inc. on [the Project]. In order for the Surety to begin its investigation into your claim, ***and to the extent you have not already done so***, we ask you to provide us with the following documentation . . . . Once we receive the requested documentation, we will forward a copy to the principal and request that it provide us with its position.

(Dkt. No. 45-12 (emphasis in original).) In another letter also dated May 1, 2014, Continental informed Ikhana of Adams's claim and that it had "written to Adams Steel, LLC acknowledging receipt of the claim, requesting additional documentation and advising that we are requesting your review and response." (*Id.*) Adams provided the requested documentation to Continental, who forwarded it to Ikhana under cover of a letter dated May 8, 2014. That letter states, in part,

> As you know, in its letter dated May 1, 2014, Continental Casualty Company initially requested supporting documentation of the claimant as well as your position regarding this claim, copies of which you have already received. **We now enclose documents Adams Steel, LLC provided in support of its claim.** Please provide us with your written response within the next 7 days.

(Dkt. No. 45-13 (emphasis in original).) That letter stated a claim amount of $100,823.70. (*Id.*)

On December 15, 2014, Continental denied Adams's claim on the bond, asserting that Ikhana had a good faith defense to the claim because "proper notice of claim, a necessary prerequisite to any suit, was not provided in this matter." (Dep. of Stephen Beatty Tr. 29:12–30:16, Dec. 2, 2015, Dkt. No. 43-4.) Adams filed the present action on January 7, 2015. Adams claims three causes of action: 1) breach of contract against Elkins, 2) quasi-contract claims against Ikhana, and 3) a Miller Act claim for payment on surety against Continental. (Compl. ¶¶ 14–30.) Continental moved for summary judgment on February 9, 2016, arguing that the Miller Act claim on its payment bond must be dismissed because Adams failed to provide proper written notice of claim to Ikhana within the statutorily prescribed period.

## II. Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III. Analysis

Continental argues that there is no genuine dispute that Adams failed to give notice as required under the Miller Act. Specifically, Continental asserts that Adams's notice of claim was deficient 1) because Adams gave notice to Continental, not Ikhana, 2) because the notice period commenced on January 20, 2014, not February 13, 2014, and so the notice was untimely, and 3) because Adams cannot meet its burden to prove the date on which Ikhana received notice. In

response, Adams argues that requisite notice was provided, through Continental, and that Adams was not required to provide notice to Ikhana because Ikhana and Elkins were in a joint venture or because Ikhana and Adams were in implicit contractual privity. In reply, Continental, in addition to reiterating its notice argument, objects that the factual assertions in Adams's response lack the evidentiary support required by Rule 56(c)(2) of the Federal Rules of Civil Procedure and asserts that Ikhana and Elkins were never in a joint venture and that Ikhana and Elkins never entered into any express or implied contract.

For the reasons given below, the Court finds that Continental's evidentiary objections are without merit and that there are triable factual issues as to whether Continental is estopped from raising its Miller Act notice defense and whether Adams gave notice as required under the Miller Act. Therefore Continental is not entitled to summary judgment. The Court does not reach Adams's arguments about joint ventures or implied contracts.

### A.     Continental's Evidentiary Objections

Continental objects that twelve of the fourteen exhibits attached to Adams's response to Continental's motion for summary judgment are inadmissible in evidence because they "are not authenticated by affidavit or deposition testimony." (Reply 2.) At this time the Court will only address objections to the three exhibits material to the disposition of the present motion: Exhibits 10 (Adams Steel Delivery Ticket dated February 13, 2014), 12 (Continental correspondence regarding Adams's claims, dated May 1, 2014), and 13 (Continental correspondence regarding Adam's claims dated May 8, 2014).

Rule 56 does not require evidence supporting factual assertions to be "authenticated by affidavit or deposition testimony" as Continental argues. (Reply 2.) Although Continental cites no case law in support of its objections, it nevertheless appears that Continental may rely on outdated and superseded authorities. For example, in 1993 the Fourth Circuit held that "[i]t is well

established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). That is precisely what Continental argues here. However, *Orsi* was superseded by an amendment to Rule 56 in 2010. *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 407 (D. Md. 2015). "Under the amended Fed. R. Civ. P. 56, facts in support of or opposition to a motion for summary judgment need not be in admissible form; the new requirement is that the party identifies facts that could be put in admissible form." *Id.* (internal quotation marks omitted). "[T]he objection [now] contemplated by the amended Rule is not that the material has not been submitted in admissible form, but that it cannot be." *Id.* (second alteration in original and internal quotation marks omitted). Now, when a party objects on admissibility grounds, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, Adv. Cmte. Notes, 2010 Amendments.

At trial, Continental might have a valid objection if Adams moved to enter Exhibit 10, 12, or 13 into evidence without authentication. But Adams could easily authenticate these exhibits as a matter of routine trial practice, *e.g.*, through testimony of the recipient, or the sender, or some other appropriate document custodian, or just by the "distinctive characteristics" of the documents themselves (*e.g.*, the letterhead). *See* Fed. R. Evid. 901(b). Adams would be unable to do so as a matter of routine only if there were a genuine question as to the authenticity of the documents; Continental raises no such question. To the contrary, Defendant Ikhana *admits* that the material identified in Exhibit 10 was provided to the Project on February 13, 2014, and it admits to the correspondence in Exhibits 12 and 13. (*See* Def.'s Answer to Pl.'s Req. for Admis.[2])

---

[2] These answers were also attached as an exhibit (14) to Adams's response, but Continental does not object to Exhibit 14.

Adams, the proponent of the challenged documents, has not explained how the exhibits to its response would be presented in admissible form because Continental raised this objection in reply to that response. But the Court does not need a brief to understand how Adams could at trial authenticate correspondence that Defendants admit is authentic. The Court finds that the evidentiary objections raised in Continental's reply are without merit.

### B. Continental's Miller Act Notice Argument

#### 1. Continental May Be Equitably Estopped from Asserting Miller Act Notice Requirement as a Defense

Equitable estoppel bars a party from asserting legal claims or defenses against a counterparty that are contrary or inconsistent with earlier representations the party made to the counterparty and that the counterparty relied upon in good faith. *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996). The Fourth Circuit has found that a "good statement of the rule" of equitable estoppel "made with regard to litigation under the Miller Act" is that

> "Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay."

*Humble Oil*, 402 F.2d at 897 (quoting *McWaters & Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir. 1959)). Equitable estoppel does not require actual fraud to be shown; it is enough to show that "the person estopped, by his statements or conduct, misled another to his prejudice." *Id.* at 898.

Here, Continental acknowledged receipt of Adams's claim and 1) told Adams that its claim would be forwarded to Ikhana and 2) actually forwarded the claim to Ikhana. (Letter of May 1, 2014, Dkt. No. 45-12 ("Continental Casualty Company, acknowledges receipt of your [claim] . . . we will forward a copy to the principal and request that it provide us with its position."); Letter of

-9-

May 8, 2014, Dkt. No. 45-13 (confirming that Ikhana actually received Adams's claim).) There is no genuine dispute that Continental's assertion now, that Ikhana did not receive timely notice of claim, is contrary to its representation to Adams on May 1, 2016 that Continental "will forward a copy to [Ikhana]." And a jury could reasonably infer that Adams relied upon that representation in good faith when it did not send another notice of claim directly to Ikhana. If Adams so relied upon Continental's representation, then Continental would be estopped from using that reliance as a defense against Adams's claim for payment. Because there is a triable factual issue as to whether Continental may raise the notice defense that is the sole basis of its motion for summary judgment, the Court must deny the motion.

    2.    Genuine Issues of Material Fact Exist as to Whether Adams's Notice to Ikhana Complied with the Miller Act

        *a.*    *The Miller Act Does Not Prohibit Notice Through the Surety*

Continental argues that notice provided through the surety, rather than directly to the prime contractor, is *per se* ineffective under the Miller Act. That argument is unsupported by any authority and is devoid of merit. The statute requires 1) written notice, 2) from the claimant, 3) to the prime contractor, 4) sent within a ninety-day window by 5) means providing written, third-party verification of delivery. 40 U.S.C. § 3133(b)(2). Absolutely nothing suggests that if those criteria are met, notice is nonetheless ineffective if it passes through some particular intermediary. No such disqualifying intermediaries are identified by statute or by case law; the Court declines Continental's invitation to invent one.

        *b.*    *Adams Last Provided Labor or Materials to the Project on February 13, 2014*

Continental also argues that Adams's notice of claim was untimely because Adams ceased work on the Project on January 20, 2014. If true, that would mean that the ninety-day notice period

-10-

expired on April 20, 2014, *i.e.*, before Adams sent notice to Continental (on April 24, 2016), and therefore before Continental delivered notice to Ikhana.

The Court finds that there is no genuine dispute that Adams ceased work on the Project on February 13, 2014. As an initial matter, the Court notes that Adams asserts and Ikhana admits that work ceased on February 13, 2014. (Resp. 3; Def.'s Answer to Pl.'s Req. for Admis.) In other words, *both sides to the transaction agree* that work ceased on February 13, 2014. Continental nonetheless asks this Court to find that there can be no genuine dispute that work actually ceased on January 20, 2014. Continental argues that the notice period does not accrue from Adams's delivery of materials to the Project on February 13, 2014 because that delivery is documented by "a delivery ticket from Johnson Trucking." (Reply 4.) Continental, citing deposition testimony, argues that Johnson Trucking is a subcontractor of Adams, and, citing an unpublished 1994 opinion, *United States ex rel. Barber-Colman Co. v. U.S. Fid. & Guar. Co.*, 19 F.3d 1431 (4th Cir. 1994) (table opinion), argues that work performed by a subcontractor's subcontractor cannot accrue the Miller Act notice period. Continental's argument fails because Johnson Trucking is not a subcontractor of Adams within the meaning of "subcontractor" as used in the Miller Act.

The February 13, 2014 delivery ticket is indisputably from Adams, not Johnson Trucking. It is a preprinted form bearing Adams's letterhead and company logo. (Resp. Ex. 10.) "Johnson Trucking" appears only as a handwritten entry in the "ship via" field. (*Id.*) And Continental's legal argument that the statutory language "the date on which the person . . . furnished or supplied . . . material," 40 U.S.C. § 3133(b)(2), does not encompass shipping materials via a shipping company is erroneous. Johnson Trucking is not a subcontractor for Miller Act purposes because a deposed employee of Adams said so. (*Cf.* Reply 4 (citing Abdelnor Dep. Tr. 41:2–3).) The construction of statutory terms is controlled by case law, not deposition testimony. The

Supreme Court long ago held that laborers and materialmen are not "sub-contractors" under the Miller Act. *Clifford F. MacEvoy*, 322 U.S. at 108–10. While the word "subcontractor" [i]n a broad, generic sense . . . includes anyone who has a contract to furnish labor or material," in the building trades "a subcontractor is one who performs and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." *Id.* at 108–09.

The Middle District of Pennsylvania, noting that "a number of lower courts have had occasion to apply the *MacEvoy* test in determining whether a particular party is a subcontractor within the meaning of the Miller Act," provides an analysis that is useful to quote at length here:

> One of the most important factors to consider is the nature of the material or service supplied by the alleged subcontractor to the prime contractor. For example, a party who supplies fungible goods which are a part of his general inventory, such as sand and gravel, and the production of which does not require a specialized or customized manufacturing process in order to meet specifications of the prime contract is generally held to be a material supplier rather than a subcontractor regardless of the relationship of the cost of the materials which he supplies to the cost of the entire project. *See, e.g., Brown & Root, Inc. v. Gifford-Hill & Co.*, 319 F.2d 65 (5th Cir. 1963); *United States ex rel. Pioneer Steel Co. v. Ellis Construction Co.*, 398 F. Supp. 719 (E.D. Tenn. 1975). On the other hand, if an item is to be custom manufactured by the purported subcontractor according to the specifications found in the prime contract and the purported subcontractor bears a portion of the responsibility for the design and fabrication of the goods including the responsibility to prepare shop drawings in accordance with prime contract specifications, then it is likely that the relationship between the prime contractor and the purported subcontractor is sufficient to justify recovery by the latter's material suppliers under the Miller Act. *See, e.g., United States ex rel. Gulfport Piping Co. v. Monaco & Son, Inc.*, 222 F. Supp. 175 (D. Md. 1963), *rev'd on other grounds*, 336 F.2d 636 (4th Cir. 1964). Of course, custom manufacturing by itself is not sufficient. To a certain extent, every material supplier is required to provide to the prime contractor materials in accordance with contract specifications. Thus, in *Aetna Casualty & Surety Co. v. United States ex rel. Gibson Steel Co.*, 382 F.2d 615 (5th Cir. 1967), the Court found a contractor-subcontractor relationship lacking between the prime contractor and the purported subcontractor because although the latter performed custom manufacturing, none of the items which it made were complex but rather consisted of simple components such as stairs and ladders.

*United States ex rel. Parker-Hannifin Corp. v. Lane Const. Corp.*, 477 F. Supp. 400, 411 (M.D. Pa. 1979). If the provision of sand and gravel or even the custom manufacturing of stairs and ladders is insufficient to meet definition of subcontractor under *Clifford F. MacEvoy*, then mere provision of a delivery using a truck must also be insufficient.

*Clifford F. MacEvoy* and its explication in *Parker-Hannifin* show why the facts of *Barber-Colman*, the case upon which Continental rests its argument, are distinct from the facts of this case. In *Barber-Colman*, a prime contractor (Macco) contracted to build a Marine Corps Reserve Center. Macco subcontracted the heating, ventilation, and air conditioning work to Barber-Coleman. *Barber-Colman*, 19 F.3d 1431 (table opinion). Barber-Coleman in turn subcontracted the electric work to Fogle. *Id.* Fogle, unlike Johnson Trucking here, was a subcontractor: An electrical contractor hired to do the electric work relating to heating, ventilation, and air conditioning for a construction project is a subcontractor under the Miller Act; a trucking company named in a "ship via" field on a structural steel contractor's delivery ticket is not.

The Court therefore finds that there is no genuine dispute that Adams last provided materials on February 13, 2014. Adams was required to deliver its notice of claim to Ikhana on or before May 14, 2014. Adams's notice through Continental was, therefore, timely if, and only if, Adams can prove delivery on or before May 14, 2014 by a means producing "written, third-party verification." 40 U.S.C. § 3133(b)(2)(A).

        *c.*    *Whether Notice of Adams's Miller Act Claim Was Delivered to Ikhana on or Before May 14, 2014 is a Triable Issue of Fact*

The Miller Act not only requires subcontractors to give written notice of claim to the prime contractor within a ninety-day period, it also requires that notice to be given "by any means that provides written, third-party verification of delivery to the contractor." 40 U.S.C. §

3133(b)(2)(A).[3] The statute does not say written verification of receipt, it says written verification of delivery. In other words, the subcontractor does not need a written acknowledgement from the prime contractor; instead, it needs a written verification from the person making delivery—who must be a third-party, *i.e.*, someone other than the subcontractor or the prime contractor. But the verification must confirm that the prime contractor was actually put into possession of the notice— confirmation that notice was sent is insufficient. *Pepper Burns*, 970 F.2d at 1343. The obvious method for providing notice in accordance with the statute is registered or certified mail or a commercial delivery service. But the statute does not require notice to be delivered by mail, and the Court will not assume that the statute means something other than what it says. Congress knows how to require service by particular forms of mail when it chooses to do so. *See, e.g.*, 28 U.S.C. § 1608(a)(3) (allowing service by mail on foreign sovereigns "by any form of mail requiring signed receipt").

So, to prove delivery, Adams must produce a writing by someone other than Adams or Ikhana that proves notice was actually put into Ikhana's possession within the requisite ninety-day period. Adams must prove these facts under the same standard of proof applicable to "any other facts." *Twin Cty. Transit Mix*, 264 F. Supp. at 620. Furthermore, that writing must have been "provide[d]" by the "means" of delivery. 40 U.S.C. § 3133(b)(2)(A). Practically, this means that the written verification must have been produced within or nearly within the notice period— because a *post facto* document (*e.g.*, an affidavit created for litigation purposes) could not fairly be said to have been "provide[d]" by the "means" of delivery. But the statute does *not* say that the written verification of delivery must be provided to the subcontractor prior to any litigation.

---

[3] The statute also allows service by the same means that the U.S. Marshal may use to serve summons. 40 U.S.C. § 3133(b)(2)(B). That provision is not relevant to this action.

-14-

The record shows that written notice from Adams Steel was delivered to Ikhana under cover of a letter from Continental (a third-party) dated May 1, 2014. (Dkt. No. 45-12.) That cover letter demands Ikhana provide a written response within fourteen days. (*Id.*). A second letter, dated May 8, 2014, again forwards a written notice from Adams Steel and states that the notice provided under cover dated May 1 was in fact received by Ikhana. (Dkt. No. 45-13.) And Ikhana admits that it received timely Miller Act notice of Adams Steel's claim. (Def.'s Answer to Pl.'s Req. for Admis.) A reasonable jury could find the evidence sufficient to prove that, more likely than not, notice was delivered to Ikhana on or before May 14, 2014.

The Court therefore finds that whether Ikhana received timely notice under the Miller Act is a triable issue of fact. As an alleged lack of timely Miller Act notice is the sole basis of Continental's motion for summary judgment, the Court must deny Continental's motion for summary judgment.

## IV.    Conclusion

For the foregoing reasons, Defendant Continental's motion for summary judgment (Dkt. No. 43) is **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

March 3, 2016
Charleston, South Carolina